UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDY M. EWING

       Plaintiff,                  CIVIL ACTION NO. 05-CV-74514-DT

       vs.                           DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

REPORT AND RECOMMENDATION

I.    RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, (Docket # 11), that Defendant's Motion for Summary Judgment be **GRANTED IN PART** and **DENIED IN PART** (Docket # 16), and the case be **REMANDED** to the Commissioner for further proceedings.

II.    PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Wendy M. Ewing filed an application for Disability Insurance Benefits (DIB) with a protective filing date of June 20, 2003. (Tr. 35-38). She alleged she had been disabled since June 10, 2002 due to a heart condition, heart murmur, and rheumatoid arthritis of the hands. (Tr. 36, 42). Plaintiff's claims were first denied administratively on September 16, 2003. (Tr. 26-30). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ). (Tr. 31). A hearing took place before ALJ Henry Perez, Jr. in May 2005. (Tr. 191-216). Plaintiff was represented by an attorney at the hearing. (Tr. 23-24). The ALJ denied Plaintiff's claims in an opinion issued on July 22, 2005. (Tr. 8-17). The Appeals Council denied review of the ALJ's decision and the ALJ's decision is now the final decision of the Commissioner. (Tr. 3-5). Plaintiff appealed the denial of her claims to this Court, and both parties have filed motions for summary judgment.

### III.   MEDICAL HISTORY

Dr. Gregory Baker examined Plaintiff in August 2003. He noted that Plaintiff has a history of rheumatoid arthritis, which mostly affects her hands. In his letter to the social security administration, Dr. Baker writes that Plaintiff can stand for 20 minutes and walk for a 1/4 mile without pain. He further states that Plaintiff "has difficulty lifting, has stiffness, and has difficulty holding onto things." (Tr. 132). Dr. Baker's examination of Plaintiff revealed no tenderness of the joints. However, she had a decreased grip strength with 80 percent remaining,

mild dexterity loss, and bilateral ulnar deviation but no Heberden's nodes.[1] (Tr. 133). Dr. Baker noted that Plaintiff can pick up a coin, button a button, and open a door. Plaintiff's straight leg raising was negative and she had no difficulty getting off or on the examination table, walking heel to toe, squatting, or hopping. *Id.* Plaintiff's motor strength and sensation remained intact and her reflexes were present and symmetrical. (Tr. 135). Plaintiff also had a full range of motion in the joints of her hands and fingers. *Id.* The remaining examination results were within normal limits. (Tr. 136). A state agency medical consultant reviewed Plaintiff's medical records in September 2003 and concluded that Plaintiff could perform a full range of light work with no manipulative or postural limitations.

The record also contains the treatment notes of Plaintiff's treating physician, Dr. Parveen Qazi. Dr. Qazi noted in September 2003 that Plaintiff had synovitis in her knees, wrists, MCPs, and PIPs. Tenderness was noted in Plaintiff's elbows, shoulders, knees, and feet but no edema. Dr. Qazi started Plaintiff on methotrexate to treat these symptoms. (Tr. 177). Plaintiff refused to take alternative medications. *Id.*

In October 2003 Plaintiff reported to Dr. Qazi that she was experiencing side effects from the methotrexate, including diarrhea and nausea. She also stated that she still had joint pain in

---

[1] Heberden's nodes are "exostoses about the size of a pea or smaller, found on the terminal phalanges of the fingers in osteoarthritis, which are enlargements of the tubercles at the articular extremities of the distal phalanges." *Stedman's Medical Dictionary* 1057 (25th Ed. 1990).

her hands and knees, especially in the morning. (Tr. 170). Dr. Qazi's examination findings were similar to those of September 2003.

Dr. Qazi's treatment notes from December 2003 indicate that Plaintiff stopped taking methotrexate due to the side effects and that Plaintiff reported feeling better. An examination revealed continued synovitis in Plaintiff's MCPs, PIPs, and wrists. No edema was found but there was marked tenderness and restriction of Plantiff's wrists, shoulder discomfort, painful knees, tender MTPs, and a mild hand deformity was noted. (Tr. 167). Dr. Qazi determined that Plaintiff had rheumatoid arthritis. *Id.* Plaintiff was to start a trial of Plaquenil to treat her symptoms. *Id.* Plaintiff still refused to take alternative medications. *Id.*

Progress notes from March 2004 indicate that Plaintiff had not started on Plaquenil because she had not yet gone for her eye screening test. Examination findings remained essentially unchanged. (Tr. 161). Dr. Qazi noted in June 2004 that Plaintiff started hydroxychloroquine which resulted in some improvement. However, Plaintiff reported a flare up of pain in her knee and right shoulder. (Tr. 157). Examination findings indicated a mild reduction of puffiness in Plaintiff's MCPs and PIPs, mild restriction of her right shoulder with a tender range of motion, knee discomfort but no tenderness, and tender feet when squeezed. No edema was noted. *Id.* A rheumatology consultant reported a few days later that there was no evidence of an osseous injury to Plaintiff's right shoulder. (Tr. 156).

Plaintiff was also seen by a physical therapist in July 2004 to address the symptoms associated with her arthritis and physical therapy was ultimately recommended. (Tr. 152-55).

Plaintiff attended therapy on four occasions. She reported little to no pain and had shown some improvements. Plaintiff was eventually discharged from physical therapy because she did not appear for her appointments. (Tr. 149-51).

In December 2004 Dr. Qazi reported that Plaintiff had run out of Bextra and Plaquenil and not been on any medication. Plaintiff complained of generalized joint pain, swelling and stiffness, especially in her shoulders and knees. Tenderness was noted in Plaintiff's wrists, knees and MTPs and her fingers were puffy. Plaintiff's shoulders were restricted and painful. Again, no edema was noted. (Tr. 144). By February 2005 Plaintiff was no longer taking Plaquenil. She reported generalized joint pain especially in her right shoulder and during the morning. Examination findings were similar to those in December 2004. No definite motor deficits were noted. Plaintiff agreed to resume taking methotrexate despite the reported side effects but again refused to take alternative medicine. (Tr. 138). A rheumatology consultant noted that there was no evidence of an osseous injury to Plaintiff's right shoulder or hands. (Tr. 142).

Dr. Qazi states in a letter dated April 25, 2005 that Plaintiff is totally disabled due to her rheumatoid arthritis. Dr. Qazi notes that x-rays show joint erosions and that Plaintiff has generalized joint pain, swelling, and stiffness, severe right shoulder pain and restriction, possible rotator cuff tendinitis, intermittent anemia, and leukopenia. (Tr. 190).

## IV.  HEARING TESTIMONY

### A.  Plaintiff's Testimony

Plaintiff was born in February 1964. She testified that she had a twelfth grade education. (Tr. 194-95). Plaintiff talked about her prior employment as a nursing home housekeeper and stated that she stopped this work due to the rheumatoid arthritis in her hands. (Tr. 195-200).

Plaintiff also testified that she can no longer perform any work due to her impairments even if that work allowed for a sit/stand option because of the constant joint stiffness, cramping, swelling and pain in her hands, hips, knees and legs. (Tr. 200-01, 204, 206, 208-10). However, Plaintiff stated that she would work if she could because her family needs the money. (Tr. 208). Plaintiff told the ALJ that she can barely close her hands to make a fist due to her arthritis. (Tr. 201). Plaintiff also testified that she takes the medications Methotrexate, Celebrex and Vicodin to treat her arthritis but they do not provide relief and that the side effects from the Methotrexate and Vicodin include nausea. (Tr. 201-03). Plaintiff further stated that she did not complete her prescribed physical therapy because it was too painful and that she felt that the therapy made her condition worse. (Tr. 207-208).

As a result of these impairments, Plaintiff informed the ALJ that she: (1) can sit for maybe 15 minutes; (2) stand for maybe 15-20 minutes; (3) walk a ½ a city block; (4) does not lift anything; and (5) does not drive. (Tr. 203-05, 209-10). Plaintiff further testified that: (1)

her husband and family do the laundry, maintain the house, and cook dinner; (2) she naps daily for about 2 ½ hours in the afternoon; (3) she spends her time walking around the house looking for little things she can do despite her impairments; (4) she has taken no trips in the past year due to her impairments; (5) she can bathe and dress her self on good days but it takes a long time; and (6) she can button a blouse or pull a zipper on about 2 days a week. (Tr. 204-06, 209).

      B.    Vocational Expert's Testimony

Lawrence Zatkin, a rehabilitation counselor, testified as a vocational expert. He stated that Plaintiff's prior employment as a housekeeper involved unskilled work with light to medium exertional levels. (Tr. 211). The ALJ asked Mr. Zatkin to testify as to the number and type of jobs available for an individual of Plaintiff's age, education and work experience who needs a sit/stand option, can lift 10 pounds frequently and 20 pounds occasionally, can occasionally reach overhead with bilateral shoulders, and can occasionally use her hands and fingers for gross and fine manipulation. In response, Mr. Zatkin testified:

> The gate house guard job, the visual inspection job would qualify
> for - - well, at the light level. Well, strike the gate house guard job,
> Your Honor, because that - - the light - - the reason it's light is
> because of the, the [*sic*] requirement to be on their feet for protracted
> periods of time. There would be some machine tending jobs, where
> one would tend an automatic machine where they have to push, push
> [*sic*] hand buttons. The parts, would, would [*sic*] be more than 10
> pounds. The option to sit or stand existed primarily in the injection
> molding business. There'd be about 2,500 jobs of that type in existence.
> (Tr. 214).

Mr. Zatkin also testified that there would be 5,000 jobs of that type in Michigan. *Id.* The ALJ then asked Mr. Zatkin: "Are your responses to my hypotheticals consistent with the DOT [Dictionary of Occupational Titles]? If not, please explain." (Tr. 215). Mr. Zatkin responded that his testimony was not consistent with the DOT to the extent the jobs require a sit/stand option, which is not a concept recognized by the DOT. *Id.*

IV.     **THE ALJ'S FINDINGS**

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 16). He further found that Plaintiff had severe impairments of rheumatoid arthritis and osteoarthritis but that they do not meet or medically equal a listed severe impairment.[2] (Tr. 16-17). The ALJ also surmised that Plaintiff could not perform her past relevant work but that she retained the residual functioning capacity ("RFC") to perform a range of unskilled, light work that provided for a option to sit or stand at will and that did not require more than occasional overhead reaching with both shoulders and occasional gross and fine manipulation with her hands and fingers. (Tr. 17). Plaintiff's claim was denied because the ALJ determined that there were other jobs available in the economy for a

---

[2] The ALJ also determined that Plaintiff has a history of angina pectoris without ischemic heart disease but that Plaintiff has not sought or required treatment for this condition since August 2002. Therefore, he concluded that this condition does not interfere with Plaintiff's ability to perform work-related activities and is thus a non-severe impairment. (Tr. 13). The medical records that pertain to Plaintiff's heart condition are primarily located on pages 90 - 131 of the Transcript. Because Plaintiff does not challenge the ALJ's determination as to her heart condition, these records are not discussed further in this report.

person of Plaintiff's age, educational level, and residual functional capacity. *Id.* Furthermore, the ALJ determined that Plaintiff was not fully credible. *Id.*

## V. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

B.      **FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.   ANALYSIS

Plaintiff contends in a one page argument that the hypothetical posed by the ALJ was inaccurate and, therefore, that the VE's testimony does not support the ALJ's disability determination. Specifically, Plaintiff asserts that the ALJ's hypothetical failed to account for Dr. Baker's findings that Plaintiff has dexterity problems and significant problems with her digits. For the reasons stated below, the court concludes that Plaintiff has failed to demonstrate that the ALJ erred in the manner alleged.

The ALJ, who discussed Dr. Baker's report, reasonably accommodated the limitations noted by the doctor, including decreased grip strength, mild loss of dexterity, and bilateral ulnar deviation, by assigning an RFC to Plaintiff that limited her to work that provided for no more than occasional gross and fine manipulation with her hands and fingers.  Indeed, the ALJ specifically noted that he rejected the state agency physician's opinion that Plaintiff could work without any manipulative limitations, in part, because of Dr. Baker's assessment.  (Tr. 14).

Plaintiff makes no attempt to explain how the ALJ's RFC finding and Dr. Baker's opinion are incompatible.  Dr. Baker does not opine that Plaintiff's impairments preclude her from performing any work-related activities or that they necessitate the imposition of work limitations that are more restrictive than those found by the ALJ.

To the extent Plaintiff implies such an opinion from Dr. Baker's statement that Plaintiff "has significant difficulty using her digits and continues to drop things", such an opinion does not detract from the substantial evidence that exists to support the ALJ's findings.  Dr. Baker's

own findings indicate that Plaintiff could pick up a coin, button a button, and open a door despite her mild loss of dexterity and decreased grip strength. He further noted that Plaintiff had no tenderness, erythema or effusion of any joint and had no edema. Given this conflict, the ALJ would be free to discredit any opinion by Dr. Baker that Plaintiff could not use her hands or fingers in any work-related capacity.

Furthermore, other evidence in the record supports the ALJ's RFC finding. Medical records from Dr. Qazi indicate that Plaintiff's hand deformity was mild. The lack of edema was noted throughout the record. There was no evidence of an osseous injury to Plaintiff's hands. The ALJ also commented that the record contained minimal objective findings to confirm the synovitis diagnosis. (Tr. 13, referring to Tr. 140, 146, 166). Additionally, Plaintiff's symptoms improved with medication and physical therapy although Plaintiff quit therapy and refused to try other recommended medications. Given the record as a whole, the Court concludes that substantial evidence supports the ALJ's RFC finding that Plaintiff could occasionally use her hands and fingers for fine and gross manipulation.

Plaintiff raises no other arguments challenging the ALJ's findings, which would generally render waived any issues not specifically presented to the Court. *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). However, the Court is charged with the duty to determine whether an ALJ's findings are supported by substantial evidence and whether that ALJ employed the proper legal standards. 402 *Walters*, 127 F.3d at 528. Part of that duty, at least in this case, is to determine if substantial evidence supports the ALJ's determination that Plaintiff is not

disabled because there are a significant number of jobs in the economy that Plaintiff can perform in light of her age, education, work experience and RFC. 20 C.F.R. § 404.1520(f). The burden of proving that such jobs exist rests with the Commissioner. *Her*, 203 F.3d at 391.

The ALJ determined that a significant number of visual inspector and machine tender jobs exist in southeast Michigan and Michigan that Plaintiff could perform, taking into consideration Plaintiff's age, education, work experience, and RFC. (Tr. 16). The ALJ properly relied upon the VE's testimony in making this determination. *Id.*; *Varley*, 820 F.2d at 779. However, in doing so, the ALJ failed to comply with Social Security Ruling 00-4p. Before an ALJ may rely upon a VE's testimony, the ALJ must address any apparent unresolved conflicts between the jobs identified by the VE and the DOT's classification of these jobs. SSR 00-4p places an affirmative duty upon an ALJ to: (1) ask the VE whether any conflicts exist between the expert's testimony and the DOT; and (2) "elicit a reasonable explanation" for any such conflict. SSR 00-4p. The ALJ asked the VE about potential conflicts between his testimony and the DOT. The VE thereafter testified that his testimony was not consistent with the DOT to the extent the jobs require a sit/stand option, which is not a concept recognized by the DOT (Step 1). However, the ALJ never elicited a "reasonable explanation" to explain away the conflict (Step 2).

Moreover, this deficiency is highlighted by the ALJ's written opinion wherein he discusses this conflict. The ALJ wrote:

> The vocational expert stated that his testimony varied from the

> *Dictionary of Occupational Titles* (DOT) and its companion
> publication, the *Selected Characteristics of Occupations* (SCO)
> (*See* SSR 004p). He stated that the DOT has not been updated in
> many years and does not take notice of jobs with a sit/stand option.
> He testified that he based his testimony on his extensive experience
> in the vocational field. (Tr. 16).

In this statement, the ALJ attributes testimony to the VE which never took place. The VE never testified that the DOT has not been updated in many years. More importantly, the VE never stated that his extensive experience in the vocational field informs him that despite the conflict with DOT, the visual inspection and machine tender jobs about which he testified could accommodate a sit/stand option.[3]

The VE's testimony was the only step five evidence upon which the ALJ relied. Consequently, the Court cannot rule that there is substantial evidence to support the ALJ's step five finding. The Court finds that the record requires further development as additional factual questions require resolution at the administrative level. A remand for further fact finding is required so that the Commissioner can conduct a new step five inquiry using the proper application of SSR 00-4p.

## RECOMMENDATION

Based on the foregoing, Plaintiff's Motion for Summary Judgment (Docket # 11) should be **DENIED**, Defendant's Motion for Summary Judgment (Docket # 16) should be **GRANTED**

---

[3] The VE's testimony suggests that the ability to sit/stand at will is an option only in machine tending jobs within the injection molding business but the VE's use of the term "existed" makes it unclear if such jobs are even currently available.

**IN PART** and **DENIED IN PART**, and the case should be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for an evidentiary hearing consistent with this report.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: November 13, 2006            s/ Mona K. Majzoub
                                                MONA K. MAJZOUB
                                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record and Charise Claudle on this date.

Dated: November 13, 2006                s/ Lisa C. Bartlett
                                        Courtroom Deputy